JUDGE BUCHWALD

DUANE MORRIS LLP
Gregory P. Gulia
Vanessa C. Hew
Mitchell A. Frank
1540 Broadway
New York, New York 10036-4086
Telephone: (212) 692-1000
Facsimile: (212) 692-1020

Attorneys for Plaintiff
CONOPCO, INC. D/B/A UNILEVER

**14 CV 2223**

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

RECEIVED
MAR 28 2014
U.S.D.C. S.D. N.Y.
CASHIERS

| | |
|---|---|
| CONOPCO, INC. D/B/A UNILEVER, <br><br> Plaintiff, <br><br> v. <br><br> WELLS ENTERPRISES, INC., <br><br> Defendant. | Case No.: <br><br><br> COMPLAINT AND JURY DEMAND |

Plaintiff, Conopco, Inc. d/b/a Unilever ("Unilever"), by its undersigned attorneys, Duane Morris, LLP, for its Complaint alleges as follows:

1.      This action is brought against defendant Wells Enterprises, Inc. ("Defendant") for federal trade dress infringement, false designation of origin and unfair competition, in violation of the Lanham Act, and for substantial and related claims of unfair competition, deceptive trade practices and injury to business reputation under the state and common laws of the State of New York.

2.      Unilever's claims arise from Defendant's use, in connection with the production, marketing, advertising, promotion, distribution and sale of Defendant's BOMB POPS frozen

confection products, of a trade dress that is likely to cause confusion with Unilever's famous and

distinctive trade dress used in connection with its well-known and distinctive FIRECRACKER®

products.

3.      Unilever seeks injunctive relief and monetary damages.

## PARTIES

4.      Unilever is a New York corporation, with a place of business at 700 Sylvan Avenue,

Englewood Cliffs, New Jersey 07632.  Unilever and its affiliated companies are leading

manufacturers of food and personal care products.  Among their products and widely recognizable

brands, Unilever and/or its affiliates and their licensees manufacture, market and sell frozen

confections, ice cream, and a variety of other products under the federally registered and famous

SICLE®, POPSICLE® (the "POPSICLE® Mark"), FUDGSICLE®, CREAMSICLE®,

CHOCSICLE® and YOSICLE® trademarks (collectively, the "SICLE Marks").

5.      Upon information and belief, defendant Wells Enterprises, Inc. is a corporation,

having a place of business at One Blue Bunny Drive, Le Mars, Iowa 51031.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121,

Sections 1332(a), 1338(a), 1338(b) and 1367(a) of the Judicial Code, 28 U.S.C. 1332(a), § 1338(a),

§ 1338(b) and § 1367(a), and under principles of supplementary jurisdiction.

7.      This Court has personal jurisdiction over the Defendant, and venue is proper in this

district, pursuant to 28 U.S.C. § 1391(b) and (c), because Defendant does business in and/or has

substantial contacts with the State of New York and/or the events giving rise to the claims alleged in

this complaint have a substantial effect in New York and a substantial part of such events occurred

and/or will occur in this district.

8.   Upon information and belief, Defendant's marketing, distribution and sale of products bearing the Infringing Product Packaging (defined below) throughout the United States, including in New York, through distributors and retailers, some of which are located in New York, constitute substantial contacts with the State of New York, such that Defendant may reasonably anticipate being brought into a New York court.

9.   The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### A.   Unilever's the FIRECRACKER® Mark and Trade Dress

10.   Unilever's rights in its SICLE Marks date back more than ninety years.  Over this more than nine decades, Unilever and/or its affiliates,  and their predecessors and/or their licensees (Unilever's affiliates, predecessors and their licensees are hereinafter collectively referred to as the "Related Entities"), have successfully grown and expanded the famous and well-known federally registered SICLE Marks to include, among others, SICLE®, POPSICLE®, POPSICLE THE ORIGINAL BRAND (and Design)®, CREAMSICLE®, FUDGSICLE®, CHOCSICLE® and YOSICLE®, for frozen confections and other products.

11.   For decades, Unilever and/or the Related Entities have extensively marketed, advertised, promoted and sold frozen confections under the SICLE Marks throughout the United States.  Unilever and/or the Related Entities have sold, and continue to sell, frozen confections under the numerous SICLE Marks individually and in multi-packs through retail stores, including grocery and convenience stores, and mobile vending carts, trucks and stands across the country.  Products sold under the SICLE Marks have been promoted for many years through a wide variety of national media, including television, radio, print and a website located at the domain name "www.popsicle.com."

12.     As a result of the longstanding, extensive, and widespread use, marketing and promotion of the SICLE Marks and products by Unilever and/or the Related Entities, Unilever's SICLE Marks are widely recognized by the general consuming public as a designation of source for Unilever's frozen confections and other products. Indeed, POPSICLE® brand frozen confections are the number one kids frozen novelty brand in the United States.

13.     Unilever is the exclusive owner of numerous federal registrations for its SICLE Marks, including, but not limited to, the following:

| Mark | Registration Number | Registration Date | International Class | Goods |
|---|---|---|---|---|
| POPSICLE THE ORIGINAL BRAND® (and Design)<br><br> | Reg. No. 1,840,718 | June 21, 1994 | International Class 30 | "frozen confections" |
| POPSICLE® | Reg. No. 2,421,400 | January 16, 2001 | International Class 30 | "frozen confections" |
| FUDGSICLE® | Reg. No. 434,594 | November 25, 1947 | International Class 30 | "frozen confections and powdered concentrates for making the same" |
| CREAMSICLE® | Reg. No. 1,839,541 | June 14, 1994 | International Class 30 | "frozen confections" |
| CHOCSICLE® | Reg. No. 3,178,063 | November 28, 2006 | International Class 30 | "frozen confections" |
| YOSICLE® | Reg. No. 4,150,906 | May 29, 2012 | International Class 30 | "ice creams, frozen confections and frozen yogurt" |

| Mark | Registration Number | Registration Date | International Class | Goods |
|---|---|---|---|---|
| SICLE® | Reg. No. 4,396,616 | September 3, 2013 | International Class 30 | "ice creams and frozen confections" |

Unilever's registrations for the SICLE Marks provide constructive notice of Unilever's claim of ownership under 15 U.S.C. § 1072.

14.     Unilever's federal registrations for POPSICLE THE ORIGINAL BRAND® (and Design) (Reg. No. 1,840,718), POPSICLE® (Reg. No. 2,421,400) and CREAMSICLE® (Reg. No. 1,839,541), are incontestable pursuant to 15 U.S.C. § 1065, and thus provide conclusive evidence of Unilever's exclusive right to use the marks covered by the registrations in commerce in connection with the goods specified in the registrations.

15.     Unilever markets, distributes and sells its POPSICLE® brand frozen confections in Unilever's well-known and distinctive POPSICLE® product packaging (the "POPSICLE® Trade Dress") which consists of: (a) a yellow background; (b) the POPSICLE® Logo (defined below); and (c) a graphic depiction of the actual specific POPSICLE® product contained in the packaging.  The POPSICLE® Logo consist of an oval-shaped burst in which the POPSICLE® Mark appears in large, white, rounded  lettering against a red and blue background.  Above the oval shaped burst containing the POPSICLE® Mark, the words "The Original Brand" appear—this is also an element of the POPSICLE® Logo.

16.     Unilever has been marketing, distributing and selling its POPSICLE® brand products and different varieties thereof in the POPSICLE® Trade Dress since at least as early as 1994.

17.     One of the varieties of Unilever's POPSICLE® brand frozen confection treats is its FIRECRACKER® brand frozen confections.  Unilever has been marketing, advertising, promoting

and selling frozen confections under the FIRECRACKER® trademark ("FIRECRACKER® Mark")

since at least as early as 1989. Unilever is also the exclusive owner of a United States Trademark

Registration No. 3,346,742 for the FIRECRACKER® Mark for "frozen confections." This

registration is incontestable and serves as conclusive evidence of Unilever's exclusive right to use

the FIRECRACKER® Mark and the validity thereof.

18.     Unilever markets, distributes and sells its FIRECRACKER® brand of frozen

confection treats in Unilever's well-known and distinctive product packaging (the

"FIRECRACKER® Trade Dress") in, among other channels, supermarkets, superstores and

drugstores.

19.     The FIRECRACKER® Trade Dress is an inherently distinctive product packaging

which is comprised of the following original and distinctive elements: (a) an illustration featuring

three FIRECRACKER® products positioned at the center of the product packaging with the center

FIRECRACKER® frozen confection prominently positioned in the foreground vertically leaning

towards the right at an approximate 75 degree angle and pointing upwards and the remaining

FIRECRACKER® products in the background with the closest FIRECRACKER® product partially

obscured by the front FIRECRACKER® product and leaning at a 45 degree angle towards the right

while pointing upwards and the furthest FIRECRACKER® product also partially obscured by the

front FIRECRACKER® product and leaning towards the left at a 105 degree angle and pointing

upwards; (b) the FIRECRACKER® Mark depicted in red lettering and outlined in both white and

red with the letter "I" depicted as a red and white firecracker dotted with a blue star; (c) streams of

yellow fire emanating from various directions; (d) small yellow stars; (e) prominent yellow

background; (f) distinctive color scheme consisting of yellow, blue, white and red, and (g) the

POPSICLE® logo.   Annexed hereto as Exhibit 1 is a photograph of the FIRECRACKER® Trade

Dress.

20.     Unilever's well-known FIRECRACKER® Trade Dress is inherently distinctive and not functional, has acquired distinctiveness and serves to readily distinguish Unilever's FIRECRACKER® products from those of its competitors.

21.     Unilever continuously and extensively advertises and promotes the FIRECRACKER® Mark and FIRECRACKER® Trade Dress and the products sold thereunder. Unilever and its predecessors have spent substantial sums advertising and promoting FIRECRACKER® brand frozen confections in the United States.

22.     Unilever operates a website at the domain name address www.popsicle.com, which serves to advertise and promote its FIRECRACKER® brand products and provide nutritional and dietary information and support to consumers of FIRECRACKER® frozen confection products.

23.     Unilever's FIRECRACKER® products are currently available and sold to consumers throughout this District, this State, and the United States.

24.     Over the years, the volume of sales of goods in the United States sold under the FIRECRACKER® Mark and FIRECRACKER® Trade Dress has been enormous.  Moreover, Unilever's FIRECRACKER® frozen confection products are a leading brand of frozen confection products in the United States with many millions of dollars in sales in the United States since 1989.

25.     The extraordinary success of Unilever's FIRECRACKER® brand products over many years has fostered wide renown with the trade and public and the products sold under the FIRECRACKER® brand have a reputation for being of the highest quality.  As a result of such success, and the long, continuous and exclusive use of the FIRECRACKER® Mark and FIRECRACKER® Trade Dress in connection with the marketing of Unilever's frozen confection products, Unilever's FIRECRACKER® products have also come to be identified by the trade and public by and with the FIRECRACKER® Mark and FIRECRACKER® Trade Dress alone.

**B.      Defendant's Unlawful Activities**

26.      Upon information and belief, Defendant manufactures, markets, distributes and sells frozen confection products under the name BOMB POPS sold through numerous mass retail trade channels, such as supermarkets, drug stores, convenience stores and national chain stores including the same retailers in which Unilever sells its FIRECRACKER® frozen confection products.

27.      Upon information and belief, Defendant's BOMB POPS frozen confection products are marketed in product packaging ("Infringing Product Packaging") which features simulations, confusingly similar variations, or colorable imitations of the FIRECRACKER® product packaging, and include distinctive and protectable elements of the FIRECRACKER® Trade Dress. Annexed hereto as Exhibit 2 are photographs of Defendant's infringing BOMB POPS products which are marketed, advertised and sold in the Infringing Product Packaging.

28.      The Infringing Product Packaging mimics and imitates Plaintiff's FIRECRACKER® Trade Dress. As evidence of Defendants' improper and infringing conduct, below is an illustrated side-by-side comparison of the FIRECRACKER® Trade Dress and Defendant's Infringing Product Packaging. Here, a picture is worth a thousand words as the side-by-side comparison demonstrates Defendant's blatant and outrageous copying and misappropriation of the FIRECRACKER® Trade Dress.



29.     Defendant's Infringing Product Packaging also features the words "The Original" in smaller white lettering directly above the BOMB POP name.  The words "the Original" are also depicted in large, white, rounded lettering (outlined in blue) against a red and blue, oval-shaped device.  This graphic was clearly designed to emulate Plaintiff's POPSICLE® logo thereby increasing the likelihood of resultant consumer confusion.

30.     To further promote consumer confusion, Defendant has also removed its Wells' "Blue Bunny" house mark from the new packaging of its BOMB POP products, thereby increasing the likelihood that consumers will confuse its BOMB POPS products with Unilever's products.

31.     Upon information and belief, Defendant has been and will continue to market, promote, and sell its frozen confection products bearing the Infringing Product Packaging in the same or substantially similar types, flavors, and styles of frozen confections that Unilever and its

predecessors have marketed and sold in product packaging imitating the FIRECRACKER® Trade Dress.

32.     Defendant's unauthorized and infringing use of the Infringing Product Packaging has caused consumer confusion in the marketplace.  Upon information and belief, consumers have been confused and misled by Defendant's unauthorized and infringing use of the Infringing Product Packaging to believe that Defendant's BOMB POPS brand products are sponsored by, licensed from or otherwise affiliated with, Unilever and/or its FIRECRACKER® brand products.

33.     Defendant's adoption and use of the Infringing Product Packaging for its BOMB POP frozen confection products is likely to tarnish the FIRECRACKER® Trade Dress by creating an association between Defendant's inferior products and Unilever and its FIRECRACKER® products.  Such an association will undermine and damage the substantial goodwill and reputation associated with Plaintiff and its FIRECRACKER® Trade Dress, which Unilever has spent many years and many millions of dollars to develop, and will dilute the distinctiveness of the FIRECRACKER® Trade Dress.

### C.     Defendant's Unlawful Conduct is Willful and Intentional

34.     Defendant's unlawful conduct is and continues to be knowing, deliberate and willful.

35.     Defendant knew, or should have known, of Unilever's well-established and prior rights in Unilever's FIRECRACKER® Trade Dress before Defendant adopted and began using the Infringing Product Packaging for and in connection with its competitive products.

36.     Defendant's use of the Infringing Product Packaging in the United States occurred long after Plaintiff and its predecessors began using the FIRECRACKER® Trade Dress and the FIRECRACKER® Trade Dress had acquired enormous goodwill and become well-known.

37.     Defendant adopted, commenced use of and is using and planning to use the Infringing Product Packaging with the intent and purpose of trading on the extensive goodwill built

up by Unilever in its FIRECRACKER® Trade Dress and to reap the benefits of years of effort and investment by Unilever to create public recognition of its product.

38.     Defendant has continued to use the Infringing Product Packaging notwithstanding Defendant's actual knowledge of Unilever's prior and exclusive rights to its FIRECRACKER® Trade Dress, and despite Unilever providing Defendant with written notice of its objections to Defendant's unlawful use of the Infringing Product Packaging and Unilever's demands that Defendant cease the illegal conduct alleged in this complaint

39.     Prior to the filing of this Complaint, Unilever's counsel sent a letter to Defendant, dated February 17, 2014, advising Defendant of Plaintiff's exclusive rights in the FIRECRACKER® Trade Dress and demanding that Defendant immediately cease its infringing activities.  Annexed hereto as Exhibit 3 is a copy of the demand letter sent to Defendant on February 17, 2014.

40.     Despite being put on actual notice of Unilever's exclusive rights, Defendant, to date, has not ceased its illegal activities in willful violation and disregard of Unilever's exclusive intellectual property rights.

41.     Despite being put on notice of Unilever's rights in its well-known FIRECRACKER® Trade Dress, Defendant nonetheless willfully infringed, and continues to willfully dilute and infringe, Unilever's FIRECRACKER® Trade Dress in violation of Unilever's rights.

42.     Upon information and belief, Defendant has adopted, commenced use of and is using and planning to use the Infringing Product Packaging for its BOMB POP products with the intent and purpose of commercially exploiting and trading upon the fame, recognition, reputation and extensive goodwill built up by Unilever in the FIRECRACKER® Trade Dress and to reap the benefits of years of effort and investment by Unilever to create public recognition of the FIRECRACKER® Trade Dress.

43.     Unless Defendant's illegal activities are enjoined by this Court, Defendant's unlawful activities will cause and/or are likely to cause consumers to suffer harm and/or injury as a result of use of Defendant's infringing BOMB POP products.

44.     Defendant's use of the Infringing Product Packaging has caused, and is likely to continue to cause confusion, mistake or deception, now and in the future, as to the origin, source, and sponsorship of Defendant's products.

45.     If Defendant is permitted to continue marketing, selling and distributing the infringing BOMB POP products, Plaintiff is likely to lose future business from consumers who mistakenly purchased and consumed Defendant's infringing BOMB POP products, which are of inferior quality.

46.     As a direct and proximate result of Defendant's unlawful conduct, Unilever has suffered, and will continue to suffer, irreparable injury to its distinctive FIRECRACKER® Trade Dress and to the goodwill and business reputation associated with its distinctive FIRECRACKER® Trade Dress.  Defendant's unlawful conduct will continue unless enjoined and restrained by this Court.  Unilever has no adequate remedy at law for Defendant's continuing violations of its rights as set forth herein.

**FIRST CLAIM FOR RELIEF**
**FEDERAL TRADE DRESS INFRINGEMENT**
**(15 U.S.C. § 1125(a)(1))**

47.     Unilever repeats and realleges paragraphs 1 through 46 above and incorporates them by reference as if fully set forth herein.

48.     Defendant's use of a copy, variation, simulation or colorable imitation of Unilever's distinctive FIRECRACKER® Trade Dress infringes Unilever's exclusive rights in the distinctive FIRECRACKER® Trade Dress, is likely to cause confusion, mistake, or deception, and constitutes trade dress infringement, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

49.     Defendant has used or intends to use a copy, variation, simulation or colorable imitation of the FIRECRACKER® Trade Dress with full knowledge of the extensive prior use of such trade dress by Unilever.  Defendant's unlawful conduct is and has been knowing, deliberate and willful.

50.     Defendant's conduct has caused and is causing immediate and irreparable injury to Unilever, and to its goodwill and reputation, and will continue both to damage Unilever and to confuse the public unless enjoined by this Court.  Unilever has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. §1125(a)(1))

51.     Unilever repeats and realleges paragraphs 1 through 50 above and incorporates them by reference as if fully set forth herein.

52.     Defendant's use of the Infringing Product Packaging is likely to cause confusion, mistake, or deception, and constitutes a false designation of origin, false description and false representation of Defendant's goods, and a false representation that Defendant's goods originate with or are sponsored, endorsed, licensed, authorized and/or affiliated or connected with Unilever in violation of Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1). Defendant's unlawful conduct is and has been knowing, deliberate and willful.

53.     Defendant's conduct has caused and is causing immediate and irreparable injury to Unilever, and to its goodwill and reputation, and will continue both to damage Unilever and to confuse the public unless enjoined by this Court. Unilever has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
## DILUTION AND INJURY TO BUSINESS REPUTATION
### (N.Y. General Business Law §360-l)

54.     Unilever repeats and realleges paragraphs 1 through 53 above and incorporates them by reference as if fully set forth herein.

55.     Defendant's use of a copy, variation, simulation or colorable imitation of Unilever's distinctive FIRECRACKER® Trade Dress has caused and will continue to cause dilution of the distinctive quality of Unilever's FIRECRACKER® Trade Dress, resulting in injury to Unilever's business reputation.

56.     Defendant's use of a copy, variation, simulation or colorable imitation of Unilever's distinctive FIRECRACKER® Trade Dress in connection with goods and services not controlled or subject to control by Unilever has caused and will continue to cause dilution and/or injury to the reputation of Unilever and Unilever's goods.

57.     By reason of the foregoing, Unilever is entitled to injunctive relief under New York General Business Law §360-l.

## FOURTH CLAIM FOR RELIEF
## DECEPTIVE TRADE PRACTICES
### (N.Y. General Business Law §349)

58.     Unilever repeats and realleges paragraphs 1 through 57 above and incorporates them by reference as if fully set forth herein.

59.     By reason of the acts and practices set forth above, Defendant has and is engaged in deceptive trade practices or acts in the conduct of a business, trade or commerce, or furnishing of goods and/or services in violation of §349 of the New York General Business Law.

60.     The public is likely to be damaged as a result of the deceptive trade practices or acts engaged in by the Defendant.

61.     Unless enjoined by the Court, Defendant will continue said deceptive trade practices or acts, thereby deceiving the public and causing immediate and irreparable damage to Unilever. Unilever has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
## COMMON LAW UNFAIR COMPETITION

62.     Unilever repeats and realleges paragraphs 1 through 61 above and incorporates them by reference as if fully set forth herein.

63.     Upon information and belief, Defendant was aware of Unilever's prior rights, and adopted and used the Infringing Product Packaging in willful disregard of Unilever's rights.

64.     Upon information and belief, Defendant's use of the Infringing Product Packaging has resulted in the misappropriation of and trading upon Unilever's goodwill and business reputation at Unilever's expense and at no expense to Defendant.

65.     The effect of Defendant's misappropriation of the goodwill symbolized by the FIRECRACKER® Trade Dress is to unjustly enrich Defendant, damage Unilever and confuse and/or deceive the public.

66.     Defendant's conduct constitutes unfair competition with Unilever, all of which has caused and will continue to cause irreparable injury to Unilever's goodwill and reputation unless enjoined by this Court.  Unilever has no adequate remedy at law.

WHEREFORE, Unilever demands judgment as follows:

1.      Preliminarily and permanently enjoining Defendant, its employees, agents, attorneys, successors, and assigns, and all those in active concert and participation with Defendant from:

(a)      using and/or authorizing any third party to use the Infringing Product Packaging and/or any other counterfeit, copy, simulation, confusingly similar variation, and/or colorable imitation of Unilever's distinctive FIRECRACKER® Trade Dress, or any other trade dress belonging to Plaintiff, in any manner or form, on or in connection with any business, products and/or services, and/or in the marketing, advertising and/or promotion of same;

(b)      imitating, copying or making any unauthorized use of Unilever's distinctive FIRECRACKER® Trade Dress, or any other trade dress belonging to Unilever, and/or any copy, simulation, variation and/or imitation thereof;

(c)      making and/or displaying any statement and/or representation that is likely to lead the public and/or the trade to believe that Defendant and/or the Defendant's products and/or services are in any manner associated and/or affiliated with and/or approved, endorsed, licensed, sponsored, authorized and/or franchised by or are otherwise connected with Unilever;

(d)      using and/or authorizing any third party to use in connection with the rendering, offering, advertising, and/or promotion of any goods, products, and/or services any false description, false representation, and/or false designation of origin, and/or any marks, names, words, symbols, devices, and/or trade dress which falsely associate such goods, products and/or services with Unilever and/or tend to do so;

(e)      diluting the distinctive quality of Unilever's distinctive FIRECRACKER® Trade Dress or any other trade dress belonging to Unilever;

(f)      registering and/or applying to register as a trademark, service mark, domain name, trade name and/or other source identifier or symbol of origin, whether alone or in combination with any other words or designs, any mark, trade dress and/or name that infringes on and/or is likely to be confused with Unilever's distinctive FIRECRACKER® Trade Dress or any other trade dress belonging to Unilever;

(g)     engaging in any other activity constituting unfair competition with Unilever, and/or

constituting an infringement of Unilever's FIRECRACKER® Trade Dress or any other trade dress

belonging to Unilever, and/or of Unilever's rights therein; and

(h)     aiding, assisting and/or abetting any other party in doing any act prohibited by sub-

paragraphs (a) through (g).

2.     Requiring Defendant to identify all distributors, retail establishments and/or

wholesale establishments to whom Defendant distributed and/or sold any products packaged in the

Infringing Product Packaging.

3.     Directing that Defendant deliver for destruction any products, advertisements, and/or

other materials in its possession, and/or under its control, incorporating the Infringing Product

Packaging, and/or bearing simulations, variations and/or colorable imitations of Unilever's

FIRECRACKER® Trade Dress, used alone and/or in combination with other words and/or designs.

4.     Directing that Defendant recall all products, packaging, labels, catalogs, containers,

advertisements, signs, displays and/or other related materials in its possession or under its control,

packaged in the Infringing Product Packaging, or any counterfeit, copy, simulation, confusingly

similar variation, or colorable imitation thereof.

5.     Directing such other relief as the Court may deem appropriate to prevent the trade

and/or public from deriving the erroneous impression that any product and/or service manufactured,

sold, distributed, licensed and/or otherwise offered, circulated and/or promoted by Defendant is

authorized by Unilever and/or related in any way to Unilever's FIRECRACKER® products.

6.     Directing that Defendant file with the Court and serve upon Unilever's counsel within

thirty (30) days after entry of such judgment, a report in writing under oath, setting forth in detail the

manner and form in which Defendant has complied therewith.

7.     Awarding Unilever such damages as they have sustained and/or will sustain by reason of Defendant's trade dress infringement, trade dress dilution, and/or unfair competition.

8.     Awarding Unilever all gains, profits, property and/or advantages derived by Defendant from such conduct; and pursuant to 15 U.S.C. § 1107, awarding Unilever an amount up to three times the amount of the actual damages sustained as a result of Defendant's violation of the Lanham Act.

9.     Awarding Unilever exemplary and punitive damages to deter any future willful infringement as the Court finds appropriate.

10.     Awarding Unilever its costs and disbursements incurred in this action, including its reasonable attorneys' fees.

11.     Awarding Unilever interest, including pre-judgment interest, on the foregoing sums.

### JURY DEMAND

Unilever hereby demands a trial by jury pursuant to Rule 38, Federal Rules of Civil Procedure.

Respectfully submitted,

DUANE MORRIS LLP

By:_____

Gregory P. Gulia
Vanessa C. Hew
Mitchell A. Frank
1540 Broadway
New York, New York  10036-4086
Telephone:  212-692-1000
Fax:  212-692-1020

Attorneys for Plaintiff
Conopco, Inc. d/b/a Unilever