## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CONOPCO, INC. D/B/A UNILEVER,

      Plaintiff,

v.

WELLS ENTERPRISES, INC.

      Defendant.

Case No.: 1:14-cv-02223-NRB-RLE

ANSWER, AFFIRMATIVE DEFENSES
AND COUNTERCLAIM

For its Answer to the Complaint of Conopco, Inc. d/b/a Unilever ("Unilever" or "Plaintiff"), Defendant Wells Enterprises, Inc. ("Wells") states and alleges by reference to the paragraph numbers of that Complaint as follows:

### PARTIES

1.     This action is brought against defendant Wells Enterprises, Inc. ("Defendant") for federal trade dress infringement, false designation of origin and unfair competition, in violation of the Lanham Act, and for substantial and related claims of unfair competition, deceptive trade practices and injury to business reputation under the state and common laws of the State of New York.

**ANSWER:**    Wells admits that Plaintiff's Complaint purports to allege claims of trade dress infringement, false designation of origin, unfair competition, and related state and common law claims. Wells denies liability on all such and claims and denies the remaining allegations of Paragraph 1.

2.     Unilever's claims arise from Defendant's use, in connection with the production, marketing, advertising, promotion, distribution and sale of Defendant's BOMB POPS frozen confection products, of a trade dress that is likely to cause confusion with Unilever's famous and

distinctive trade dress used in connection with its well-known and distinctive FIRECRACKER® products.

**ANSWER:** Wells denies the allegations of Paragraph 2.

3. Unilever seeks injunctive relief and monetary damages.

**ANSWER:** Wells admits that Plaintiff purports to seek injunctive relief and monetary damages. Wells denies that Plaintiff is entitled to any relief whatsoever and denies the remaining allegations of Paragraph 3.

## PARTIES

4. Unilever is a New York corporation, with a place of business at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. Unilever and its affiliated companies are leading manufacturers of food and personal care products. Among their products and widely recognizable brands, Unilever and/or its affiliates and their licensees manufacture, market and sell frozen confections, ice cream, and a variety of other products under the federally registered and famous SICLE®, POPSICLE® (the "POPSICLE® Mark"), FUDGSICLE®, CREAMSICLE®, CHOCSICLE® and YOSICLE® trademarks (collectively, the "SICLE Marks").

**ANSWER:** Wells is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 4.

5. Upon information and belief, defendant Wells Enterprises, Inc. is a corporation, having a place of business at One Blue Bunny Drive, Le Mars, Iowa 51031.

**ANSWER:** Wells admits that it is a corporation with its principal place of business located at One Blue Bunny Drive, Le Mars, Iowa 51031.

2

## JURISDICTION AND VENUE

6.     This Court has jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, Sections 1332(a), 1338(a), 1338(b) and 1367(a) of the Judicial Code, 28 U.S.C. 1332(a), § 1338(a), § 1338(b) and § 1367(a), and under principles of supplementary jurisdiction.

**ANSWER:**    Wells admits that this Court has subject matter jurisdiction over this action. Wells denies all allegations of Paragraph 6 not specifically admitted herein.

7.     This Court has personal jurisdiction over the Defendant, and venue is proper in this district, pursuant to 28 U.S.C. § 1391(b) and (c), because Defendant does business in and/or has substantial contacts with the State of New York and/or the events giving rise to the claims alleged in this complaint have a substantial effect in New York and a substantial part of such events occurred and/or will occur in this district.

**ANSWER:**    Wells admits that jurisdiction and venue are proper in this district. Wells denies all allegations of Paragraph 7 not specifically admitted herein.

8.     Upon information and belief, Defendant's marketing, distribution and sale of products bearing the Infringing Product Packaging (defined below) throughout the United States, including in New York, through distributors and retailers, some of which are located in New York, constitute substantial contacts with the State of New York, such that Defendant may reasonably anticipate being brought into a New York court.

**ANSWER:**    Wells admits that jurisdiction and venue are proper in this district. Wells denies all allegations of Paragraph 8 not specifically admitted herein.

9.     The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**ANSWER:** Wells admits the allegations of Paragraph 9, but denies that Plaintiff is entitled to any relief whatsoever in this action.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.    Unilever's the FIRECRACKER® Mark and Trade Dress**

10.     Unilever's rights in its SICLE Marks date back more than ninety years. Over this more than nine decades, Unilever and/or its affiliates, and their predecessors and/or their licensees (Unilever's affiliates, predecessors and their licensees are hereinafter collectively referred to as the "Related Entities"), have successfully grown and expanded the famous and well-known federally registered SICLE Marks to include, among others, SICLE®, POPSICLE®, POPSICLE THE ORIGINAL BRAND (and Design)®, CREAMSICLE®, FUDGSICLE®, CHOCSICLE® and YOSICLE®, for frozen confections and other products.

**ANSWER:** Wells denies the allegations of Paragraph 10.

11.     For decades, Unilever and/or the Related Entities have extensively marketed, advertised, promoted and sold frozen confections under the SICLE Marks throughout the United States. Unilever and/or the Related Entities have sold, and continue to sell, frozen confections under the numerous SICLE Marks individually and in multi-packs through retail stores, including grocery and convenience stores, and mobile vending carts, trucks and stands across the country. Products sold under the SICLE Marks have been promoted for many years through a wide variety of national media, including television, radio, print and a website located at the domain name www.popsicle.com.

**ANSWER:** Wells is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 11.

12.     As a result of the longstanding, extensive, and widespread use, marketing and promotion of the SICLE Marks and products by Unilever and/or the Related Entities, Unilever's SICLE Marks are widely recognized by the general consuming public as a designation of source for Unilever's frozen confections and other products. Indeed, POPSICLE® brand frozen confections are the number one kids frozen novelty brand in the United States.

**ANSWER:**     Wells denies the allegations of Paragraph 12.

13.     Unilever is the exclusive owner of numerous federal registrations for its SICLE Marks, including, but not limited to, the following:

| Mark | Registration Number | Registration Date | International Class | Goods |
|------|--------------------|--------------------|--------------------|-------|
| POPSICLE THE ORIGINAL BRAND® (and Design)  | Reg. No. 1,840,718 | June 21, 1994 | International Class 30 | "frozen confections" |
| POPSICLE® | Reg. No. 2,421,400 | January 16, 2001 | International Class 30 | "frozen confections" |
| FUDGSICLE® | Reg. No. 434,594 | November 25, 1947 | International Class 30 | "frozen confections and powdered concentrates for making the same" |
| CREAMSICLE® | Reg. No. 1,839,541 | June 14, 1994 | International Class 30 | "frozen confections" |
| CHOCSICLE® | Reg. No. 3,178,063 | November 28, 2006 | International Class 30 | "frozen confections" |
| YOSICLE® | Reg. No. 4,150,906 | May 29, 2012 | International Class 30 | "ice creams, frozen confections and frozen yogurt" |

| Mark | Registration Number | Registration Date | International Class | Goods |
|------|---------------------|-------------------|--------------------|-------|
| SICLE® | Reg. No. 4,396,616 | September 3, 2013 | International Class 30 | "ice creams and frozen confections" |

Unilever's registrations for the SICLE Marks provide constructive notice of Unilever's claim of ownership under 15 U.S.C. § 1072.

**ANSWER:**  Wells is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 13.

14.  Unilever's federal registrations for POPSICLE THE ORIGINAL BRAND® (and Design) (Reg. No. 1,840,718), POPSICLE® (Reg. No. 2,421,400) and CREAMSICLE® (Reg. No. 1,839,541), are incontestable pursuant to 15 U.S.C. § 1065, and thus provide conclusive evidence of Unilever's exclusive right to use the marks covered by the registrations in commerce in connection with the goods specified in the registrations.

**ANSWER:**  Wells denies the allegations of Paragraph 14.

15.  Unilever markets, distributes and sells its POPSICLE® brand frozen confections in Unilever's well-known and distinctive POPSICLE® product packaging (the "POPSICLE® Trade Dress") which consists of:  (a) a yellow background; (b) the POPSICLE® Logo (defined below); and (c) a graphic depiction of the actual specific POPSICLE® product contained in the packaging.  The POPSICLE® Logo consist of an oval-shaped burst in which the POPSICLE® Mark appears in large, white, rounded lettering against a red and blue background.  Above the oval shaped burst containing the POPSICLE® Mark, the words "The Original Brand" appear- this is also an element of the POPSICLE® Logo.

**ANSWER:** Wells denies the allegations of Paragraph 15 and refers to the POPSICLE product packaging for the contents thereof.

16. Unilever has been marketing, distributing and selling its POPSICLE® brand products and different varieties thereof in the POPSICLE® Trade Dress since at least as early as 1994.

**ANSWER:** Wells is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 16.

17. One of the varieties of Unilever's POPSICLE® brand frozen confection treats is its FIRECRACKER® brand frozen confections. Unilever has been marketing, advertising, promoting and selling frozen confections under the FIRECRACKER® trademark ("FIRECRACKER® Mark") since at least as early as 1989. Unilever is also the exclusive owner of a United States Trademark Registration No. 3,346,742 for the FIRECRACKER® Mark for "frozen confections." This registration is incontestable and serves as conclusive evidence of Unilever's exclusive right to use the FIRECRACKER® Mark and the validity thereof.

**ANSWER:** Wells admits that Unilever advertises and sells a FIRECRACKER brand frozen confection and that Unilever uses the name POPSICLE on the packaging of such product. Wells is without sufficient information or knowledge to form a belief as to the truth or falsity of the remaining allegations of Paragraph 17.

18. Unilever markets, distributes and sells its FIRECRACKER® brand of frozen confection treats in Unilever's well-known and distinctive product packaging (the "FIRECRACKER® Trade Dress") in, among other channels, supermarkets, superstores and drugstores.

**ANSWER:** Wells admits that FIRECRACKER brand frozen confection treats are sold in supermarkets and other types of stores. Wells denies all allegations of Paragraph 18 not specifically admitted herein.

19. The FIRECRACKER® Trade Dress is an inherently distinctive product packaging which is comprised of the following original and distinctive elements: (a) an illustration featuring three FIRECRACKER® products positioned at the center of the product packaging with the center FIRECRACKER® frozen confection prominently positioned in the foreground vertically leaning towards the right at an approximate 75 degree angle and pointing upwards and the remaining FIRECRACKER® products in the background with the closest FIRECRACKER® product partially obscured by the front FIRECRACKER® product and leaning at a 45 degree angle towards the right while pointing upwards and the furthest FIRECRACKER® product also partially obscured by the front FIRECRACKER® product and leaning towards the left at a 105 degree angle and pointing upwards; (b) the FIRECRACKER® Mark depicted in red lettering and outlined in both white and red with the letter "I" depicted as a red and white firecracker dotted with a blue star; (c) streams of yellow fire emanating from various directions; (d) small yellow stars; (e) prominent yellow background; (f) distinctive color scheme consisting of yellow, blue, white and red, and (g) the POPSICLE® logo. Annexed hereto as Exhibit 1 is a photograph of the FIRECRACKER® Trade Dress.

**ANSWER:** Wells admits that Exhibit 1 contains what appears to be a photograph of product packaging for Plaintiff's Firecracker product. Wells denies Plaintiff's characterization of Exhibit 1 and denies all allegations of Paragraph 19 not specifically admitted herein.

8

20. Unilever's well-known FIRECRACKER® Trade Dress is inherently distinctive and not functional, has acquired distinctiveness and serves to readily distinguish Unilever's FIRECRACKER® products from those of its competitors.

**ANSWER:** Wells denies the allegations of Paragraph 20.

21. Unilever continuously and extensively advertises and promotes the FIRECRACKER® Mark and FIRECRACKER® Trade Dress and the products sold thereunder. Unilever and its predecessors have spent substantial sums advertising and promoting FIRECRACKER® brand frozen confections in the United States.

**ANSWER:** Wells is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 21.

22. Unilever operates a website at the domain name address www.popsicle.com, which serves to advertise and promote its FIRECRACKER® brand products and provide nutritional and dietary information and support to consumers of FIRECRACKER® frozen confection products.

**ANSWER:** Wells is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 22.

23. Unilever's FIRECRACKER® products are currently available and sold to consumers throughout this District, this State, and the United States.

**ANSWER:** Wells is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 23.

24. Over the years, the volume of sales of goods in the United States sold under the FIRECRACKER® Mark and FIRECRACKER® Trade Dress has been enormous. Moreover, Unilever's FIRECRACKER® frozen confection products are a leading brand of frozen

9

confection products in the United States with many millions of dollars in sales in the United States since 1989.

**ANSWER:** Wells is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 24.

25. The extraordinary success of Unilever's FIRECRACKER® brand products over many years has fostered wide renown with the trade and public and the products sold under the FIRECRACKER® brand have a reputation for being of the highest quality. As a result of such success, and the long, continuous and exclusive use of the FIRECRACKER® Mark and FIRECRACKER® Trade Dress in connection with the marketing of Unilever's frozen confection products, Unilever's FIRECRACKER® products have also come to be identified by the trade and public by and with the FIRECRACKER® Mark and FIRECRACKER® Trade Dress alone.

**ANSWER:** Wells denies the allegations of Paragraph 25.

**B.    Defendant's Unlawful Activities**

26. Upon information and belief, Defendant manufactures, markets, distributes and sells frozen confection products under the name BOMB POPS sold through numerous mass retail trade channels, such as supermarkets, drug stores, convenience stores and national chain stores including the same retailers in which Unilever sells its FIRECRACKER® frozen confection products.

**ANSWER:** Wells admits that it manufactures, markets, distributes and sells its BOMB POP® product in channels such as supermarkets, drug stores, convenience stores, and national chain stores. Wells denies all allegations of Paragraph 26 not specifically admitted herein.

27.     Upon information and belief, Defendant's BOMB POPS frozen confection products are marketed in product packaging ("Infringing Product Packaging") which features simulations, confusingly similar variations, or colorable imitations of the FIRECRACKER® product packaging, and include distinctive and protectable elements of the FIRECRACKER® Trade Dress. Annexed hereto as Exhibit 2 are photographs of Defendant's infringing BOMB POPS products which are marketed, advertised and sold in the Infringing Product Packaging.

**ANSWER:**     Wells admits that Exhibit 2 contains what appears to be a photograph of product packaging for Wells' BOMB POP® product. Wells denies Plaintiff's characterization of Exhibit 2 and denies all allegations of Paragraph 27 not specifically admitted herein.

28.     The Infringing Product Packaging mimics and imitates Plaintiff's FIRECRACKER® Trade Dress. As evidence of Defendants' improper and infringing conduct, below is an illustrated side-by-side comparison of the FIRECRACKER® Trade Dress and Defendant's Infringing Product Packaging. Here, a picture is worth a thousand words as the side-by-side comparison demonstrates Defendant's blatant and outrageous copying and misappropriation of the FIRECRACKER® Trade Dress.



**POPSICLE® FIRECRACKER®**
**Trade Dress**

**Infringing BOMB POP**
**Trade Dress**

**ANSWER:** Wells admits that Paragraph 28 contains side-by-side black and white images of Plaintiff's Firecracker packaging and Wells' BOMP POP® packaging. Wells denies Plaintiff's characterization of these images and denies all allegations not specifically admitted herein.

29.    Defendant's Infringing Product Packaging also features the words "The Original" in smaller white lettering directly above the BOMB POP name. The words "the Original" are also depicted in large, white, rounded lettering (outlined in blue) against a red and blue, oval-shaped device. This graphic was clearly designed to emulate Plaintiff's POPSICLE® logo thereby increasing the likelihood of resultant consumer confusion.

**ANSWER:** Wells admits that the BOMB POP® packaging depicted above contains the words "The Original" in two locations, because the BOMB POP® is the original or first red-white-and-blue rocket shaped frozen ice treat, preceding the Firecracker product by more than thirty years. Wells further admits that it has used the words "The Original" on its packaging for

12

many years prior to Plaintiff's filing of its complaint in this action. Wells denies Plaintiff's characterization of the BOMB POP® packaging and denies all allegations of Paragraph 29 not specifically admitted herein.

30.     To further promote consumer confusion, Defendant has also removed its Wells' "Blue Bunny" house mark from the new packaging of its BOMB POP products, thereby increasing the likelihood that consumers will confuse its BOMB POPS products with Unilever's products.

**ANSWER:**     Wells denies the allegations of Paragraph 30.

31.     Upon information and belief, Defendant has been and will continue to market, promote, and sell its frozen confection products bearing the Infringing Product Packaging in the same or substantially similar types, flavors, and styles of frozen confections that Unilever and its predecessors have marketed and sold in product packaging imitating the FIRECRACKER® Trade Dress.

**ANSWER:**     Wells denies the allegations of Paragraph 31.

32.     Defendant's unauthorized and infringing use of the Infringing Product Packaging has caused consumer confusion in the marketplace. Upon information and belief, consumers have been confused and misled by Defendant's unauthorized and infringing use of the Infringing Product Packaging to believe that Defendant's BOMB POPS brand products are sponsored by, licensed from or otherwise affiliated with, Unilever and/or its FIRECRACKER® brand products.

**ANSWER:**     Wells denies the allegations of Paragraph 32.

33.     Defendant's adoption and use of the Infringing Product Packaging for its BOMB POP frozen confection products is likely to tarnish the FIRECRACKER® Trade Dress by creating an association between Defendant's inferior products and Unilever and its

13

FIRECRACKER® products. Such an association will undermine and damage the substantial goodwill and reputation associated with Plaintiff and its FIRECRACKER® Trade Dress, which Unilever has spent many years and many millions of dollars to develop, and will dilute the distinctiveness of the FIRECRACKER® Trade Dress.

**ANSWER:** Wells denies the allegations of Paragraph 33.

**C.** **Defendant's Unlawful Conduct is Willful and Intentional**

34. Defendant's unlawful conduct is and continues to be knowing, deliberate and willful.

**ANSWER:** Wells denies the allegations of Paragraph 34.

35. Defendant knew, or should have known, of Unilever's well-established and prior rights in Unilever's FIRECRACKER® Trade Dress before Defendant adopted and began using the Infringing Product Packaging for and in connection with its competitive products.

**ANSWER:** Wells denies the allegations of Paragraph 35.

36. Defendant's use of the Infringing Product Packaging in the United States occurred long after Plaintiff and its predecessors began using the FIRECRACKER® Trade Dress and the FIRECRACKER® Trade Dress had acquired enormous goodwill and become well-known.

**ANSWER:** Wells denies the allegations of Paragraph 36.

37. Defendant adopted, commenced use of and is using and planning to use the Infringing Product Packaging with the intent and purpose of trading on the extensive goodwill built up by Unilever in its FIRECRACKER® Trade Dress and to reap the benefits of years of effort and investment by Unilever to create public recognition of its product.

**ANSWER:** Wells denies the allegations of Paragraph 37.

14

38. Defendant has continued to use the Infringing Product Packaging notwithstanding Defendant's actual knowledge of Unilever's prior and exclusive rights to its FIRECRACKER® Trade Dress, and despite Unilever providing Defendant with written notice of its objections to Defendant's unlawful use of the Infringing Product Packaging and Unilever's demands that Defendant cease the illegal conduct alleged in this complaint

**ANSWER:** Wells denies the allegations of Paragraph 38.

39. Prior to the filing of this Complaint, Unilever's counsel sent a letter to Defendant, dated February 17, 2014, advising Defendant of Plaintiff's exclusive rights in the FIRECRACKER® Trade Dress and demanding that Defendant immediately cease its infringing activities. Annexed hereto as Exhibit 3 is a copy of the demand letter sent to Defendant on February 17, 2014.

**ANSWER:** Wells admits that Exhibit 3 contains a letter dated February 17, 2014 addressed to Wells. Wells denies Plaintiff's characterization of the letter and its contents and denies all allegations of Paragraph 39 not specifically admitted herein.

40. Despite being put on actual notice of Unilever's exclusive rights, Defendant, to date, has not ceased its illegal activities in willful violation and disregard of Unilever' s exclusive intellectual property rights.

**ANSWER:** Wells denies the allegations of Paragraph 40.

41. Despite being put on notice of Unilever's rights in its well-known FIRECRACKER® Trade Dress, Defendant nonetheless willfully infringed, and continues to willfully dilute and infringe, Unilever's FIRECRACKER® Trade Dress in violation of Unilever's rights.

**ANSWER:** Wells denies the allegations of Paragraph 41.

42.     Upon information and belief, Defendant has adopted, commenced use of and is using and planning to use the Infringing Product Packaging for its BOMB POP products with the intent and purpose of commercially exploiting and trading upon the fame, recognition, reputation and extensive goodwill built up by Unilever in the FIRECRACKER® Trade Dress and to reap the benefits of years of effort and investment by Unilever to create public recognition of the FIRECRACKER® Trade Dress.

**ANSWER:**     Wells denies the allegations of Paragraph 42.

43.     Unless Defendant's illegal activities are enjoined by this Court, Defendant's unlawful activities will cause and/or are likely to cause consumers to suffer harm and/or injury as a result of use of Defendant's infringing BOMB POP products.

**ANSWER:**     Wells denies the allegations of Paragraph 43.

44.     Defendant's use of the Infringing Product Packaging has caused, and is likely to continue to cause confusion, mistake or deception, now and in the future, as to the origin, source, and sponsorship of Defendant's products.

**ANSWER:**     Wells denies the allegations of Paragraph 44.

45.     If Defendant is permitted to continue marketing, selling and distributing the infringing BOMB POP products, Plaintiff is likely to lose future business from consumers who mistakenly purchased and consumed Defendant's infringing BOMB POP products, which are of inferior quality.

**ANSWER:**     Wells denies the allegations of Paragraph 45.

46.     As a direct and proximate result of Defendant's unlawful conduct, Unilever has suffered, and will continue to suffer, irreparable injury to its distinctive FIRECRACKER® Trade Dress and to the goodwill and business reputation associated with its distinctive

FIRECRACKER® Trade Dress. Defendant's unlawful conduct will continue unless enjoined and restrained by this Court. Unilever has no adequate remedy at law for Defendant's continuing violations of its rights as set forth herein.

**ANSWER:** Wells denies the allegations of Paragraph 46.

### FIRST CLAIM FOR RELIEF
### FEDERAL TRADE DRESS INFRINGEMENT
### (15 U.S.C. § 1125(a)(l))

47. Unilever repeats and realleges paragraphs 1 through 46 above and incorporates them by reference as if fully set forth herein.

**ANSWER:** Wells incorporates by reference each and every allegation contained in this Answer as if fully set forth herein.

48. Defendant's use of a copy, variation, simulation or colorable imitation of Unilever's distinctive FIRECRACKER® Trade Dress infringes Unilever's exclusive rights in the distinctive FIRECRACKER® Trade Dress, is likely to cause confusion, mistake, or deception, and constitutes trade dress infringement, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**ANSWER:** Wells denies the allegations of Paragraph 48.

49. Defendant has used or intends to use a copy, variation, simulation or colorable imitation of the FIRECRACKER® Trade Dress with full knowledge of the extensive prior use of such trade dress by Unilever. Defendant's unlawful conduct is and has been knowing, deliberate and willful.

**ANSWER:** Wells denies the allegations of Paragraph 49.

50.   Defendant's conduct has caused and is causing immediate and irreparable injury to Unilever, and to its goodwill and reputation, and will continue both to damage Unilever and to confuse the public unless enjoined by this Court. Unilever has no adequate remedy at law.

**ANSWER:**   Wells denies the allegations of Paragraph 50.

## SECOND CLAIM FOR RELIEF
## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. §1125(a)(l))

51.   Unilever repeats and realleges paragraphs 1 through 50 above and incorporates them by reference as if fully set forth herein.

**ANSWER:**   Wells incorporates by reference each and every allegation contained in this Answer as if fully set forth herein.

52.   Defendant's use of the Infringing Product Packaging is likely to cause confusion, mistake, or deception, and constitutes a false designation of origin, false description and false representation of Defendant's goods, and a false representation that Defendant's goods originate with or are sponsored, endorsed, licensed, authorized and/or affiliated or connected with Unilever in violation of Section 43(a)(l) of the Lanham Act, 15 U.S.C. § 1125(a)(l). Defendant's unlawful conduct is and has been knowing, deliberate and willful.

**ANSWER:**   Wells denies the allegations of Paragraph 52.

53.   Defendant's conduct has caused and is causing immediate and irreparable injury to Unilever, and to its goodwill and reputation, and will continue both to damage Unilever and to confuse the public unless enjoined by this Court. Unilever has no adequate remedy at law.

**ANSWER:**   Wells denies the allegations of Paragraph 53.

18

## THIRD CLAIM FOR RELIEF
## DILUTION AND INJURY TO BUSINESS REPUTATION
## (N.Y. General Business Law §360-1)

54.     Unilever repeats and realleges paragraphs 1 through 53 above and incorporates them by reference as if fully set forth herein.

**ANSWER:**     Wells incorporates by reference each and every allegation contained in this Answer as if fully set forth herein.

55.     Defendant's use of a copy, variation, simulation or colorable imitation of Unilever's distinctive FIRECRACKER® Trade Dress has caused and will continue to cause dilution of the distinctive quality of Unilever's FIRECRACKER® Trade Dress, resulting in injury to Unilever's business reputation.

**ANSWER:**     Wells denies the allegations of Paragraph 55.

56.     Defendant's use of a copy, variation, simulation or colorable imitation of Unilever's distinctive FIRECRACKER® Trade Dress in connection with goods and services not controlled or subject to control by Unilever has caused and will continue to cause dilution and/or injury to the reputation of Unilever and Unilever's goods.

**ANSWER:**     Wells denies the allegations of Paragraph 56.

57.     By reason of the foregoing, Unilever is entitled to injunctive relief under New York General Business Law §360-1.

**ANSWER:**     Wells denies the allegations of Paragraph 57.

## FOURTH CLAIM FOR RELIEF
## DECEPTIVE TRADE PRACTICES
## (N.Y. General Business Law §349)

58.     Unilever repeats and realleges paragraphs 1 through 57 above and incorporates them by reference as if fully set forth herein.

**ANSWER:** Wells incorporates by reference each and every allegation contained in this Answer as if fully set forth herein.

59. By reason of the acts and practices set forth above, Defendant has and is engaged in deceptive trade practices or acts in the conduct of a business, trade or commerce, or furnishing of goods and/or services in violation of §349 of the New York General Business Law.

**ANSWER:** Wells denies the allegations of Paragraph 59.

60. The public is likely to be damaged as a result of the deceptive trade practices or acts engaged in by the Defendant.

**ANSWER:** Wells denies the allegations of Paragraph 60.

61. Unless enjoined by the Court, Defendant will continue said deceptive trade practices or acts, thereby deceiving the public and causing immediate and irreparable damage to Unilever.

**ANSWER:** Wells denies the allegations of Paragraph 61.

## FIFTH CLAIM FOR RELIEF
## COMMON LAW UNFAIR COMPETITION

62. Unilever repeats and realleges paragraphs 1 through 61 above and incorporates them by reference as if fully set forth herein.

**ANSWER:** Wells incorporates by reference each and every allegation contained in this Answer as if fully set forth herein.

63. Upon information and belief, Defendant was aware of Unilever's prior rights, and adopted and used the Infringing Product Packaging in willful disregard of Unilever's rights.

**ANSWER:** Wells denies the allegations of Paragraph 63.

20

64.     Upon information and belief, Defendant's use of the Infringing Product Packaging has resulted in the misappropriation of and trading upon Unilever's goodwill and business reputation at Unilever's expense and at no expense to Defendant.

**ANSWER:**     Wells denies the allegations of Paragraph 64.

65.     The effect of Defendant's misappropriation of the goodwill symbolized by the FIRECRACKER® Trade Dress is to unjustly enrich Defendant, damage Unilever and confuse and/or deceive the public.

**ANSWER:**     Wells denies the allegations of Paragraph 65.

66.     Defendant's conduct constitutes unfair competition with Unilever, all of which has caused and will continue to cause irreparable injury to Unilever's goodwill and reputation unless enjoined by this Court. Unilever has no adequate remedy at law.

**ANSWER:**     Wells denies the allegations of Paragraph 66.

## GENERAL DENIAL

Wells denies each and every allegation, matter, or thing contained in the Complaint, express or implied, not expressly admitted herein.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
(Failure to State a Claim)

1.     Plaintiff's Complaint, on one or more claims alleged, fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
(Invalid Trademark)

2.    Plaintiff's claims are barred, in whole or in part, because Plaintiff has no valid, protectable marks, trade dress or registrations that give Plaintiff any rights that may be asserted against Wells.

## THIRD AFFIRMATIVE DEFENSE
(Laches)

3.    Plaintiff's claims are barred, in whole or in part, by the doctrine of laches because Plaintiff has unreasonably delayed enforcing its rights, if any, despite full awareness of Wells' actions, and Wells relied on such delay such that it would be unfairly prejudiced if Plaintiff were awarded monetary and/or injunctive relief.

## FOURTH AFFIRMATIVE DEFENSE
(Waiver, Acquiescence, and Estoppel)

4.    Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, acquiescence, and estoppel.

## FIFTH AFFIRMATIVE DEFENSE
(Unclean Hands)

5.    Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands based on: (a) Plaintiff's intentional copying of the product design of the BOMB POP® which is the subject of several federally registered trademarks and which would be the cause of any consumer confusion, if such confusion existed; and (b) Plaintiff's unfair competition in attempting to include an invalid, generic trademark, namely, the alleged POPSICLE mark, as part of its alleged trade dress.

## SIXTH AFFIRMATIVE DEFENSE
### (No Damages)

6.     Without admitting that Plaintiff's Complaint states a claim, there has been no damage in any amount, manner or at all by reason of any act alleged against Wells in the Complaint, and the relief prayed for in the Complaint therefore cannot be granted.

## SEVENTH AFFIRMATIVE DEFENSE
### (No Willful Infringement)

7.     Plaintiff's claims are barred, in whole or in part, because any allegedly infringing conduct by Wells was neither willful nor intentional.

## EIGHTH AFFIRMATIVE DEFENSE
### (Adequate Remedy at Law)

8.     The alleged injury suffered by the Plaintiff, if any, would be adequately compensated by damages. Accordingly, Plaintiff has a complete and adequate remedy at law and is not entitled to seek equitable relief.

## NINTH AFFIRMATIVE DEFENSE
### (No Irreparable Harm)

9.     Plaintiff's claims for injunctive relief are barred because Plaintiff cannot show that it will suffer any irreparable harm resulting from Wells' actions.

## TENTH AFFIRMATIVE DEFENSE
### (No Likelihood of Confusion as to Allegedly Protectable Elements of Trade Dress)

10.     To the extent that any likelihood of confusion exists between Wells' BOMB POP® and Unilever's FIRECRACKER frozen confection—and none does—such confusion would stem from (1) Unilever's infringement of Wells' registered trademark rights in the product design of the BOMB POP®; and/or (2) the fact that consumers believe that both Wells' BOMB POP® and Unilever's FIRECRACKER frozen confection are both "popsicles," a generic term for both the BOMB POP® and the FIRECRACKER products.

## ADDITIONAL DEFENSES

11.    Defendant reserves all other affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Lanham Act, and any other defenses at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

## DEFENDANT WELLS ENTERPRISES, INC.'S COUNTERCLAIM AGAINST PLAINTIFF CONOPCO, INC.

For its counterclaim against Conopco, Inc. ("Unilever" or "Plaintiff"), Defendant Wells Enterprises, Inc. ("Wells") states as follows:

1.    Wells asserts a claim for willful false advertising under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125 and related state law claims, arising from Unilever's recent decision to prominently feature the words "The Original" on its FIRECRACKER product packaging, knowing that the FIRECRACKER is not the first red-white-and-blue rocket shaped frozen ice treat.

2.    Wells also asserts a conditional claim for infringement of Wells' U.S. Trademark Registration Nos. 1,039,931 and 1,127,938, depicted below:

 

(the "BOMB POP® Design").

## PARTIES

3.  Wells Enterprises, Inc. is a Delaware corporation with its principal place of business at One Blue Bunny Drive, Le Mars, Iowa 51031.

4.  Upon information and belief, Unilever is a New York corporation with a place of business at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over Wells' counterclaim pursuant to Rule 13 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 and under the principles of supplemental jurisdiction.

6.  This Court has personal jurisdiction over Unilever because Unilever is a New York corporation and does business in and/or has substantial contacts with the State of New York. For example, Unilever markets, distributes, and sells its products throughout the United States, including in New York. In addition, Wells' claims against Unilever arise from Unilever's contacts with the New York, including without limitation, the advertising, promotions and sale of FIRECRACKER brand frozen pops.

7.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## FACTUAL BACKGROUND

**A.  Wells Enterprises, Inc. and its BOMB POP® Frozen Ice Treat.**

8.  Wells is the largest privately held, family-owned ice cream and frozen treat manufacturer in the United States. The company was founded in 1913 and is headquartered in Le Mars, Iowa, the Ice Cream Capital of the World. Wells produces more than 150 million gallons of ice cream a year, including its signature brand, BLUE BUNNY®, super premium brand 2ND ST. CREAMERY®, and the iconic BOMP POP®.

9.     The BOMB POP® is the original or first red-white-and-blue rocket shaped frozen ice pop sold in the United States. Created by James S. Merritt and D.S. Abernethy in 1955, the BOMB POP® preceded Unilever's FIRECRACKER frozen confection in the market by more than 30 years.

10.     For decades, Merritt and Abernethy's Merritt Foods sold the BOMB POP® product to consumers throughout the United States. In the early 1990's, Wells acquired Merritt Foods, and began to offer the BOMB POP® under the Blue Bunny brand.

11.     Today, Wells owns nine trademark registrations on the Principal Register of the United States Patent & Trademark Office for different aspects of the name and distinctive design of the BOMB POP® product, including the following:

| Trademark | Registration Number | First Use in Commerce | Registration Date | Int'l Class | Goods & Services |
|---|---|---|---|---|---|
| BOMB POP | 948,643 | April 15, 1959 | December 12, 1972 | International Class 30, 46 | Frozen confections |
|  | 1,039,931 | March 1970 | May 18, 1976 | International Class 30, 46 | Frozen confections |
|  | 1,127,938 | July 1965 | December 18, 1979 | International Class 30, 46 | Frozen confections |

12.     Wells' federal registrations described in the chart above are incontestable pursuant to 15 U.S.C. § 1065, and thus provide conclusive evidence of Wells' exclusive right to

use the BOMB POP® name and the BOMB POP® Design in commerce in connection with frozen confections.

13. The Certificate of Registration for U.S. Trademark No. 1,039,931 for the BOMB POP® Design describes the design as follows:

> THE TRADEMARK COMPRISES THE RED, WHITE AND BLUE COLORING AND COLOR PATTERN OF A FROZEN CONFECTION BEING IN THE SHAPE OF A ROCKET OR MISSILE HAVING A PLURALITY OF RADIALLY PROJECTING FINS AND BEING SYMMETRICAL ABOUT A LONGITUDINAL AXIS IN WHICH THE UPPER END OR NOSE CONE PORTION IS RED IN COLOR, THE MIDDLE OR SECOND STAGE PORTION IS WHITE IN COLOR, AND THE LOWER END OR FIRST STAGE PORTION IS BLUE IN COLOR.

14. The BOMB POP® Design is inherently distinctive and not functional, and has acquired distinctiveness which distinguishes Wells' BOMB POP® products from those of its competitors.

15. As depicted in the chart below, Wells has continuously marketed, distributed and sold BOMB POP® frozen ice treats which embody the BOMB POP® Design since it acquired the BOMB POP® brand in 1993, and Wells has touted the BOMB POP's origins as "The Original" red-white-and-blue rocket shaped frozen ice pop on its product packaging for nearly two decades.

| BOMB POP® Packaging | Year(s) |
|---|---|
|  | 1993–1994 |
|  | 1995 |
|  | 1997–1999 |



| | |
|---|---|
| | 2003–2004 |
| | 2005 |
| | 2006–2011 |
| | 2013–Present |

16.     Wells and its predecessors have expended substantial sums of money advertising and promoting frozen ice treats embodying the BOMB POP® Design, and Wells has sold many millions of dollars' worth of frozen ice treats embodying the BOMB POP® Design in the United States.

17.     The extraordinary success of Wells' classic frozen ice treats embodying the BOMB POP® Design over many years has fostered wide renown with consuming public, and Wells' products embodying the BOMB POP® Design have a reputation for being of the highest quality. As a result of this success, and Wells' long and continuous use of the BOMB POP® Design in connection with the marketing, distribution, and sale of its frozen ice treats, Wells' products embodying the BOMB POP® Design have come to be identified by the consuming public as emanating from a single source.

**B.     Unilever and its Knock-Off FIRECRACKER Frozen Confection.**

18.     Unilever and/or its affiliates and/or their licensees manufacture, market and sell frozen confections and ice cream including the FIRECRACKER brand frozen confections depicted below:



19. The design of the FIRECRACKER ice pop is overwhelmingly similar to Wells' trademarked BOMB POP® Design. The FIRECRACKER frozen confection mirrors the BOMB POP® in every aspect, from its rocket-like appearance, to its red-above-white-above-blue color scheme, to its symmetrical, radially projecting fins.

20. Unilever introduced the FIRECRACKER product nearly 30 years after the advent of the BOMB POP® frozen ice treat in 1955 with full knowledge of the decades-old trademark registrations in the BOMB POP® Design, and with an intent to trade on the substantial goodwill embodied in the BOMB POP® Design.

21. In its Complaint against Wells (Dkt. 1), Unilever claims that the BOMB POP® product packaging Wells introduced in January 2013 infringes Unilever's trade dress in its FIRECRACKER product packaging.

22. Wells denies that its BOMB POP® product packaging infringes any purported rights of Unilever whatsoever. However, if there is a likelihood of confusion among relevant consumers as to the source of Wells' BOMB POP® product contained in the BOMB POP® product packaging, as alleged by Unilever in this action, such confusion would be the result of Unilever's infringement of Wells' trademarked BOMB POP® Design. In other words, if consumers are likely to believe that Wells' BOMB POP® product comes from the same source as Unilever's FIRECRACKER frozen confection—which they are not—this belief would be caused by Unilever's adoption of a product configuration for its FIRECRACKER product that is nearly identical to Wells' trademarked BOMB POP® Design.

23. Indeed, Unilever knew of the long-established and prior trademark rights in the BOMB POP® Design before Unilever adopted a confusingly similar design for is FIRECRACKER product.

24.     To further promote consumer confusion and deception, Unilever recently altered its FIRECRACKER product packaging to prominently feature the phrase "The Original," knowing that the BOMB POP® was the first red-white-and-blue rocket shaped frozen ice treat. Unilever's new FIRECRACKER packaging is depicted below:



(the "Deceptive Packaging").

25.     On information and belief, in addition to the Deceptive Packaging, Unilever has used and is using the Original Claim for the FIRECRACKER product in other advertising, marketing and/or packaging.

26.     The words and pictures of the Deceptive Packaging expressly and/or impliedly convey to consumers the message that the FIRECRACKER is the original or first red-white-and-blue rocket shaped frozen ice treat (the "Original Claim").

27.     The Original Claim is false. Unilever's FIRECRACKER product was introduced in the market in 1989, more than 30 years after the BOMB POP® was introduced.

28. The Original Claim is likely to have deceived and has deceived consumers of frozen confections into believing that the FIRECRACKER was the first red-white-and-blue rocket shaped frozen ice treat, when, in reality, Wells' BOMB POP® predates Unilever's knock-off product by decades.

## FIRST CLAIM FOR RELIEF

### False Advertising Under the Lanham Act
### (15 U.S.C. § 1125(a)(1)(B))

29. Wells repeats and realleges the preceding Paragraphs as if set forth fully herein.

30. Unilever has used in advertising and commerce false and misleading descriptions of fact, or false or misleading representations of fact, concerning its FIRECRACKER product.

31. By prominently displaying the phrase "The Original" on the Deceptive Packaging, among other places, Unilever has expressly and/or impliedly misrepresented the nature, characteristics, and qualities of its goods, namely that the FIRECRACKER product is the first red-white-and-blue rocket shaped frozen ice treat. This is false. Unilever's FIRECRACKER product was introduced at least 30 years after the BOMB POP® was invented in 1955.

32. Upon information and belief, Unilever has used the Deceptive Packaging to market, advertise, promote and sell its FIRECRACKER product throughout the United States.

33. The Original Claim is material to consumers' purchasing decisions.

34. The Original Claim has deceived and is likely to continue to deceive a substantial number of consumers into falsely believing that the FIRECRACKER is the first red-white-and-blue rocket shaped frozen ice treat.

35.    Unilever made the Original Claim with full knowledge that the FIRECRACKER is not the first red-white-and-blue rocket shaped frozen ice treat. Because Unilever knew or should have known of the falsity of its claim, Unilever's actions have been wilful and deliberate.

36.    Unilever's false advertising has caused and will continue to cause Wells to suffer substantial and irreparable injury, for which Wells is entitled to all of the relief provided by 15 U.S.C. §§ 1116 and 1117, including but not limited to injunctive relief, actual damages and Unilever's profits attributable to the false advertising.

## SECOND CLAIM FOR RELIEF

### Violation of New York's Deceptive Trade Practices Act
### (New York General Business Law § 349)

37.    Wells repeats and realleges the preceding Paragraphs as if set forth fully herein.

38.    By reason of the acts and practices set forth above, Unilever has and is engaged in deceptive trade practices or acts in the conduct of a business, trade or commerce, or furnishing of of goods and/or services in violation of New York General Business Law § 349.

39.    Unilever's FIRECRACKER products have been, and continue to be, advertised and sold within the State of New York using the Original Claim in the Deceptive Packaging, among other materials.

40.    Unilever's false, advertising, marketing and promotion using the Original Claim intentionally, deliberately, willfully and/or knowingly deceived the public and consumers, confuses or is likely to confuse the public and consumers, and materially misleads consumers as to the nature, characteristics and/or qualities of its FIRECRACKER product.

41.    The public is likely to be damaged as a result of the deceptive trade practices or acts engaged in by Unilever.

34

42.     Consumers have reasonably relied and/or are likely to reasonably rely upon these misrepresentations in making purchase decisions and have been injured and damaged and are likely to be further injured and damaged by Unilever's use of the Original Claim in violation of New York General Business Law § 349.

43.     Unilever's use of the Original Claim has injured and damaged and will likely further injure and damage Wells in violation of New York General Business Law § 349.

44.     Unilever's use of the Original Claim entitles Wells to increased damages, reasonable attorneys' fees and injunctive relief under New York General Business Law § 349(h).

### THIRD CLAIM FOR RELIEF

#### Violation of New York's False Advertising Statute
#### (New York General Business Law §§ 350 and 350-a)

45.     Wells repeats and realleges the preceding Paragraphs as if set forth fully herein.

46.     Unilever's advertising, including its labeling of its FIRECRACKER product using the Original Claim, is misleading in a material respect and therefore is false advertising in violation of New York General Business Law §§ 350 and 350-a.

47.     Unilever's false advertising is directed at the general public and consumers, including those within the State of New York.

48.     Unilever's FIRECRACKER products have been, and continue to be, advertised and sold within the State of New York using the Original Claim.

49.     Unilever's false, advertising, marketing and promotion using the Original Claim intentionally, deliberately, willfully and/or knowingly deceived the public and consumers, confuses or is likely to confuse the public and consumers, and materially misleads consumers as to the nature, characteristics and/or qualities of its FIRECRACKER product.

50. Consumers have reasonably relied and/or are likely to reasonably rely upon these misrepresentations in making purchase decisions and have been injured and damaged and are likely to be further injured and damaged by Unilever's use of the Original Claim in violation of New York General Business Law §§ 350 and 350-a.

51. Unilever's use of the Original Claim has injured and damaged and will likely further injure and damage Wells in violation of New York General Business Law §§ 350 and 350-a.

52. Unilever's use of the Original Claim entitles Wells to increased damages, reasonable attorneys' fees and injunctive relief under New York General Business Law § 350-e.

## FOURTH CLAIM FOR RELIEF

### Common Law

53. Wells repeats and realleges the preceding Paragraphs as if set forth fully herein.

54. Unilever's use of the Original Claim constitutes false advertising, unfair competition and unfair business practices under the common law of New York State and other applicable jurisdictions.

55. Unilever's false advertising, unfair competition and unfair business practices using the Original Claim intentionally, deliberately, willfully and/or knowingly deceived the public and consumers, confuses or is likely to confuse the public and consumers, and materially misleads consumers as to the nature, characteristics and/or qualities of its FIRECRACKER product.

56. Unilever's actions demonstrate an intentional, willful and bad faith intent to harm Wells' business, and the goodwill and reputation of Wells' BOMB POP® product.

57.     Unilever is causing, and is likely to cause, substantial injury and damage to Wells for which there is no adequate remedy at law, and Unilever is entitled to injunctive relief under common law.

58.     Wells is also entitled to recover Unilever's profits and Wells' actual damages, costs and attorneys' fees under common law.

## FIFTH CLAIM FOR RELIEF

### Trademark Infringement Under the Lanham Act
### (15 U.S.C. § 1114)

59.     Wells repeats and realleges the preceding Paragraphs as if set forth fully herein.

60.     If there is a likelihood of consumer confusion as to the source of Wells' BOMB POP®, such confusion would be the result of Unilever's infringement of Wells' exclusive rights in U.S. Trademark Registration Nos. 1,039,931 and 1,127,938 for the distinctive BOMB POP® Design and would constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114.

61.     Unilever knew of Wells' well-established and prior rights in the BOMB POP® Design before Unilever adopted a confusingly similar design for is FIRECRACKER product. Unilever's unlawful conduct therefore is and has been knowing, deliberate and willful.

62.     In the event of a likelihood of source confusion, Unilever's conduct will have caused and is causing immediate and irreparable injury to Wells, and to its goodwill and reputation, and will continue to damage Wells and to confuse the public unless enjoined by this Court. Wells has no adequate remedy at law.

## PRAYER FOR RELIEF

Wells requests that Unilever's claims be dismissed in their entirety with prejudice, that judgment be entered in favor of Wells and against Unilever, that Unilever be denied all relief requested in its claims, and that the Court enter orders and judgment as follows:

A.  Preliminarily and permanently enjoining Unilever, its employees, officers, agents attorneys, successors, and assigns, and all those in active concert and participation with any of them, from using the Deceptive Packaging and from stating or implying, in any medium whatsoever, including on product packaging, that the FIRECRACKER product is "The Original" red-white-and-blue rocket shaped frozen ice treat, and from aiding, assisting and/or abetting any other party from doing the same;

B.  Requiring Unilever to account for and pay over to Wells the profits realized by Unilever from its false advertising, as well as trebling or enhancing such amounts pursuant to 15 U.S.C. § 1117(a) and the common law;

C.  Awarding Wells its actual damages arising out of Unilever's false advertising and trebling or enhancing such amounts pursuant to 15 U.S.C. § 1117(a), New York General Business Law §§ 349(h) and 350-e and the common law;

D.  Awarding Wells its actual costs of suit and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and New York General Business Law §§ 349(h) and 350-e; and

E.  Awarding Wells such further relief as this Court may deem just and proper.

For its Fifth Claim for Relief, in the event that it is determined that there is a likelihood of confusion as to the source of Wells' BOMB POP® product, Wells additionally requests that the Court:

F.  Declare that such confusion is the result of Unilever's infringement of Wells' exclusive rights in U.S. Trademark Registration Nos. 1,039,931 and 1,127,938 for the distinctive BOMB POP® Design; and

G.  Enter an Order permanently enjoining Unilever, its employees, officers, agents, attorneys, successors, and assigns, and all those in active concert and participation with Unilever from:

i.  using and/or authorizing any third party to use any product design confusingly similar to Wells' BOMB POP® Design and/or any other counterfeit, copy, simulation, confusingly similar variation, and/or colorable imitation of Wells' BOMB POP® Design, or any other trademark belonging to Wells, in any manner or form, on or in connection with any business, products and/or services, and/or in the marketing, advertising and/or promotion of the same;

ii.  imitating, copying or making any unauthorized use of Wells' BOMB POP® Design, or any other trademark belonging to Wells, and/or any copy, simulation, variation and/or imitation thereof; and

iii.  from aiding, assisting and/or abetting any other party from doing the acts described in (i) and (ii) above.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Wells hereby demands a trial by jury on all issues so triable.

Dated  5/22/14

Respectfully Submitted,

Richard Kurnit
Edward H. Rosenthal
Beth I. Goldman
FRANKFURT KURNIT KLEIN & SELZ,
P.C.
488 Madison Avenue, 10th Floor
New York, New York 10022
Telephone: 212-980-0120
Facsimile: 212-593-9175
rkurnit@fkks.com
erosenthal@fkks.com
bgoldman@fkks.com

Natalie Hanlon-Leh (*pro hac vice to be filed*)
Marc C. Levy (*pro hac vice to be filed*)
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203-4532
Telephone: 303-607-3500
Facsimile: 303-607-3600
natalie.hanlonleh@faegreBD.com
marc.levy@faegreBD.com

Kathryn A. Feiereisel (*pro hac vice to be filed*)
Faegre Baker Daniels LLP
311 South Wacker Drive, Suite 4400
Chicago, IL 60606
Telephone: (312) 212-6500
Facsimile: (312) 212-6501
katie.feiereisel@faegreBD.com

*Counsel for Defendant-Counterclaimant*
*Wells Enterprises, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2014, I electronically filed the foregoing ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following persons at the given email addresses:

Gregory P. Gulia
Vanessa C. Hew
Mitchell A. Frank
DUANE MORRIS LLP
1540 Broadway
New York, NY 10036-4086
Telephone:     (212) 692-1000
Facsimile:      (212) 692-1020

_s/_    _Beth Goldman_