UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
CONOPCO INC. d/b/a UNILEVER,

                Plaintiff,

     - against -                **MEMORANDUM AND ORDER**

WELLS ENTERPRISES, INC.,         14 Civ. 2223 (NRB)

               Defendant.
----------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

      Plaintiff Conopco Inc. d/b/a Unilever ("Unilever") brings this action against defendant Wells Enterprises, Inc. ("Wells") for trademark infringement and related state and federal claims. Presently before the Court is Unilever's motion to dismiss Wells's counterclaims for false advertising, trademark infringement, and related state law claims. For the reasons stated herein, this motion is granted in part and denied in part.

## BACKGROUND

      Wells is "the largest privately held, family-owned ice cream and frozen treat manufacturer in the United States." Counter-Complaint ¶ 8. Founded in 1913, Wells is famous for producing ice cream under signature brands such as "Blue Bunny" and "2nd Street Creamery, as well as for the product at issue in this litigation, Wells's "Bomb Pop." Id. The Bomb Pop was the "first red-white-

and-blue rocket shaped frozen ice pop sold in the United States,"[1] created by James S. Merritt and D.S. Abernethy of Merritt Foods in 1955.  Id. ¶¶ 9-10.  Wells acquired Merritt Foods in the early 1990s and has continuously marketed, distributed, and sold Bomb Pops since acquiring the brand.  Id. ¶¶ 10, 15.  Notably, Wells has consistently marketed the Bomb Pop as "the original Bomb Pop," setting out the phrase "the original" prominently on its packaging.[2]  See id. ¶ 15.  It currently holds nine trademark registrations for the name and elements of the design of the Bomb Pop.  Id. ¶¶ 11-13.

Unilever also sells a rocket ice pop under the brand name "Firecracker."  Id. ¶ 18.  The Firecracker strongly resembles the Bomb Pop in its design, similarly featuring a "rocket-like appearance," "red-above-white-above-blue color scheme," and "symmetrical, radially projecting fins."  Id. ¶ 19.  Unilever introduced the Firecracker "nearly 30 years after the advent of the Bomb Pop."  Id. ¶ 20.

---

[1] For purposes of concision, the category of "red-white-and-blue rocket shaped frozen ice pops" will be referred to as "rocket ice pops."

[2] For example, since 2006, the Bomb Pop package has featured these designs:

 

On March 28, 2014, Unilever filed a complaint against Wells for federal trademark infringement, false designation of origin and unfair competition in violation of the Lanham Act, and unfair competition, deceptive trade practices, and injury to business reputation under New York state law.  In its pleadings, Unilever argues that the packaging of Wells's "Bomb Pop" is confusingly similar to the trade dress for Unilever's "Firecracker" products.

On May 22, 2014, Wells filed an answer and asserted counterclaims against Unilever for false advertising, trademark infringement, and related state law claims.  First, Wells alleges that Unilever has "recently altered its Firecracker product packaging to prominently feature the phrase 'The Original,' knowing that the Bomb Pop was the first red-white-and-blue rocket shaped frozen ice treat," and has therefore engaged in false advertising under the Lanham Act.  Id. ¶ 24.  Wells also asserts claims for false advertising and deceptive trade practices with respect to Unilever's use of the term "original" under New York law.  Finally, while denying infringement, Wells asserts that if a likelihood of confusion does exist between the two products, it does so as a "result of Unilever's infringement of Wells' trademarked Bomb Pop design.  In other words, if consumers are likely to believe that Wells' Bomb Pop product comes from the same source as Unilever's Firecracker--which they are not--this belief would be caused by Unilever's adoption of a product configuration

for its Firecracker product that is nearly identical to Wells'
trademarked Bomb Pop design." Id. ¶ 22.

On December 3, 2014, Unilever moved to dismiss Wells's
counterclaims for failure to state a claim under Rule 12(b)(6).[3]
This motion was fully briefed on February 2, 2015.

## DISCUSSION

### I.  Motion to Dismiss

#### A. Legal Standard

"[C]ounterclaims must meet the pleading requirements of Rule
8(a), as interpreted by Twombly and Iqbal, in order to survive a
motion to dismiss pursuant to Federal Rule of Civil Procedure
12(b)(6)." Erickson Beamon Ltd. v. CMG Worldwide, Inc., 12 Civ.
5105 (NRB), 2014 WL 3950897, at *2 (S.D.N.Y. Aug. 13, 2014); see
also Orientview Techs. LLC v. Seven for All Mankind, LLC, 13 Civ.
0538 (PAE), 2013 WL 4016302, at *3 (S.D.N.Y. Aug. 7, 2013) ("A
motion to dismiss a counterclaim is evaluated under the same
standard as a motion to dismiss a complaint.").  In considering a
defendant's counterclaims, we accept as true all factual
allegations in the pleadings and draw all reasonable inferences in
the non-moving party's favor.  Harris v. Mills, 572 F.3d 66, 71
(2d Cir. 2009); Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d

---

[3] Unilever previously filed a motion to dismiss Wells's counterclaims on June
12, 2014.  That motion was denied without prejudice on December 4, 2014,
following Unilever's filing of the current superseding motion to dismiss.

4

229, 237 (2d Cir. 2007).  Nevertheless, the counterclaimant's "[f]actual allegations must be enough to raise a right of relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  If the counterclaimant has "not nudged [its] claims across the line from conceivable to plausible," the counterclaim must be dismissed.  Twombly, 550 U.S. at 570.  This pleading standard applies to "all civil actions."  Iqbal, 556 U.S. at 684 (internal quotation marks omitted).

**B. False Advertising Under the Lanham Act**

To succeed on a false advertising claim under Section 43(a) of the Lanham Act, a plaintiff "must prove the following elements: (1) the defendant has made a false or misleading statement; (2) the false or misleading statement has actually deceived or has the capacity to deceive a substantial portion of the intended audience; (3) the deception is material, in that it is likely to influence purchasing decisions; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products."  Merck Eprova AG v. Gnosis S.p.A., 901 F. Supp. 2d 436, 449-50 (S.D.N.Y. 2012), aff'd, 760 F.3d 247 (2d Cir. 2014) (citing S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001)).

### i. The Firecracker's Packaging

At issue in this dispute is the packaging of Unilever's Firecracker, specifically its use of the phrase "the original Firecracker." As seen in the picture below, the phrase "the ORIGINAL FIRECRACKER" can be found on the Firecracker package partially covering a drawing of three rocket ice pops on a bright yellow background. The text of this phrase slants upward, with each word in the phrase drawn larger than the last. The word "the" is written in blue minuscule letters without a border, the word "original" is written in blue majuscule letters with a shadowed white border, and the word "Firecracker" is written in red majuscule letters with a blue-shadowed white border. The "I" in Firecracker has been replaced with a drawing of a red-and-white firecracker topped with a blue-and-white star for a dot; aside from this letter, both "original" and "Firecracker" are drawn in extra-bold sans-serif fonts, although the fonts are not identical.



### ii. Falsity

First, "a claim under the Lanham Act for false advertising requires allegations that: '(1) the advertisement is literally false . . . , or (2) although the advertisement is literally true, it is likely to deceive or confuse consumers." Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P., 380 F.3d 126, 132 (2d Cir. 2004) (quoting Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995)). A statement will be deemed literally false if it is false on its face, or if it unambiguously implies a falsehood. See Time Warner Cable, Inc. v. DirecTV, Inc., 497 F.3d 144, 157–58 (2d Cir. 2007). "[A] district court evaluating whether an advertisement is literally false must analyze the message conveyed in full context . . . . If the words or images, considered in context, necessarily imply a false message, the advertisement is literally false and no extrinsic evidence of consumer confusion is required. However, . . . if the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false[, though t]here may still be a basis for a claim that the advertisement is misleading . . . ." Id. at 158 (internal citations and quotation marks omitted).

Here, Wells claims that the words and pictures featured on the Firecracker's packaging necessarily and falsely imply that the Firecracker (rather than the Bomb Pop) was the first rocket ice pop. Unilever challenges this claim, arguing that the word

"original" on the Firecracker's packaging is read literally, clearly and truthfully indicating only that the product is the original <u>Firecracker</u>.  As such, Unilever asserts, its packaging is neither false nor misleading and Wells's claim must fail.

Wells counters that the phrase "the original Firecracker" may be interpreted more broadly when viewed in the context of the package as a whole.  Specifically, Wells argues that the term "original" need not be read solely to apply to the noun ("Firecracker") it modifies, but will necessarily be associated with the rocket ice pops prominently displayed on the package, thereby leaving the consumer with the impression that the Firecracker is the first of that product.  <u>See</u> Def's Opp'n at 5 ("[The] placement of the phrase "the Original" in close proximity to the dominant feature of the packaging--three red-white-and-blue missile-shaped ice pops--leads consumers to mistakenly believe that the FIRECRACKER product is the original or first red-white-and-blue rocket shaped ice pop."); <u>id.</u> at 6 ("[T]he phrase, 'The Original,' appearing in a contrasting blue color to the red color of the word 'Firecracker' and adjacent to large images of the Firecracker . . . , is false or misleading in the context of the entire packaging . . . .").

We find that Wells's allegations are sufficient to state a claim for falsity.  While it is true that manufacturers often deploy the term "original" in a brand-specific way, to modify only

the product name, it is not evident from the face of the pleadings that the word "original" must be read in this manner. The brand-specific use of "original" generally serves to distinguish between different versions of the manufacturer's product, identifying for consumers that "the original" is different from, for instance, "diet," "low-salt," "baked," "creamy," or "fun-shaped" versions. As far as the present record shows, however, the "original Firecracker" is the only Firecracker that exists, rendering Unilever's brand-specific interpretation of the phrase tautological and suggesting that the term "original" may be intended to differentiate "the original Firecracker" from other rocket ice pops rather than from other varieties of Firecracker. Wells's claim that "the original" may falsely convey originality of kind rather than brand is also supported by Unilever's deployment of "original" elsewhere on the Firecracker's package, where it indicates (truthfully) that Unilever's "Popsicle" is "The Original Brand" of ice pop, the first of the type of product.

In addition, our conclusion that the phrase "the Original Firecracker" may constitute false advertising is supported by decisions in which the use of the modifier 'original' has been found capable of falsely implying that the modified term was the first of its kind and thereby giving rise to claims of falsity under the Lanham Act. For instance, in <u>Mantae America, Inc. v. Drybranch, Inc.</u>, 91 Civ. 4822 (LMM), 1991 U.S. Dist. LEXIS 14451

(S.D.N.Y. Oct. 7, 1991), defendants had been assigned the registered trademark for the name "Scatch" and subsequently sold a game called "The Original Scatch." The plaintiff, which produced a game that had previously been called "Scatch" and had been sold under that name before "The Original Scatch," claimed that defendants' use of the term "original" constituted false advertising in violation of the Lanham Act. The court permitted the plaintiff's claim, rejecting the defendants' argument that the "use of the word 'original' modifies [only defendants'] trademark SCATCH," and finding instead that "The Original Scatch" "conveys the impression <u>either</u> that the product is the same product that was formerly sold under the name 'Scatch' <u>or</u> that the product is the first introduced of games of the general type. Both of such propositions, however, are false." <u>Id.</u> at *2-3. Similarly, in <u>Zobmondo Entertainment LLC v. Imagination Int'l Corp.</u>, 09 Civ. 2235, 2009 WL 8714439 (ABC) (C.D. Cal. June 23, 2009), where the plaintiff had "introduced the first board game based on the traditional conversational game known as 'would you rather'" and the defendant subsequently debuted its own "would you rather" board game titled "Justin & David's Original Would You Rather . . . ? Board Game," the court found that the plaintiff could "proceed with its [Lanham Act] claim that [defendant] is misrepresenting that its board game was the first 'would you rather' board game." <u>Id.</u> at *5. Unilever's branding of the Firecracker as "the original

Firecracker" on its packaging therefore may imply that the Firecracker is the first rocket ice pop, and therefore may support a claim for false advertising.

In the alternative, Wells has adequately pleaded that Unilever's packaging is misleading.  To determine whether an advertisement is misleading, a court "look[s] to consumer data to determine what 'the person to whom the advertisement is addressed find[s] to be the message.'" Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 158 (2d Cir. 2007) (quoting Am. Home Products Corp. v. Johnson & Johnson, 577 F.2d 160, 166 (2d Cir. 1978)). Assuming arguendo that Unilever's narrow reading of "the Original Firecracker" is literally true, it is nevertheless plausible that consumer studies would show that consumers interpret "original" on the Firecracker's packaging to indicate that Unilever's "Firecracker" is the original rocket ice pop.  Wells's allegations are thus sufficient to permit it to further develop facts on this theory.

### iii. Materiality

"[I]n addition to proving falsity, the plaintiff must also show that the defendants misrepresented an inherent quality or characteristic of the product.  This requirement is essentially one of materiality, a term explicitly used in other circuits." Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 855 (2d Cir. 1997) (internal citations and quotation marks omitted).

11

Unilever argues that Wells has failed to allege facts sufficient to suggest that the originality of the Firecracker would be material to consumer purchasing decisions.  However, as "materiality is generally a question of fact poorly suited to a determination at the pleadings stage," LivePerson, Inc. v. 24/7 Customer, Inc., 14 Civ. 1559 (RWS), 2015 WL 249329, at *15 (S.D.N.Y. Jan. 16, 2015) (internal quotation mark omitted), we find Wells's allegations sufficient to state a claim.

For one, Unilever's own decision to highlight the word "original" on its packaging, at the forefront of the box and as the largest word other than the product's name, suggests the relative importance, and hence materiality, of the claim to originality in its marketing of rocket ice pops.  More importantly, given that very little distinguishes one rocket ice pop from another, it is plausible that such a claim to originality could sway a consumer, either by intimating that the manufacturer has a proficiency in producing ice pops that has withstood the test of time or by intimating that these "original" ice pops are the ones the consumer remembers fondly from his childhood.  Because this term could serve to differentiate otherwise similar rocket ice pops, it is plausibly material.  See, e.g., LivePerson, Inc., 2015 WL 249329, at *14 (finding materiality sufficiently pled where plaintiff alleged that defendant falsely claimed "to have developed the 'first' predictive or smart chat platform, when in

fact plaintiff did"); cf. Telebrands Corp. v. Wilton Indus., Inc., 983 F. Supp. 471, 475 (S.D.N.Y. 1997) (finding "AS SEEN ON T.V." logo material because it "identifies the product as the one that the consumer saw advertised, and differentiates it from other products of a similar type").

**iv. Damages**

Finally, Unilever challenges Wells's false advertising claim on the ground that Wells has failed to demonstrate injury as required by the statute. "To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1395 (2014).

In its counterclaim, Wells catalogues "nineteen years of BOMB POP packaging touting the BOMB POP as the original red-white-and-blue rocket-shaped frozen ice pop," Def's Opp'n at 9, and notes the corresponding goodwill that Wells has amassed over those two decades, which Unilever's claim to originality may be putting in jeopardy. See Counter-Complaint, ¶¶ 15-17, 28. Because, at this stage of the proceedings, "[p]laintiffs need not establish . . . [or] prove . . . ., [but] must simply allege," In re Natural Gas Commodity Litig., 337 F. Supp. 2d 498, 508 (S.D.N.Y. 2004), these

allegations are sufficient to plead damages.  Unilever's motion to dismiss this claim is therefore denied.

### C. New York General Business Law

To state a claim under New York General Business Law Sections 349 and 350, "the gravamen of the complaint must be consumer injury or harm to the public interest." Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995); see also, e.g., Maurizio v. Goldsmith, 230 F.3d 518, 522 (2d Cir. 2000) (no claim under either Section 349 or Section 350 where the "dispute is fairly characterized as private . . . and without direct impact on the body of consumers").

Here, Unilever challenges Wells's claims as insufficiently consumer-oriented, arguing that the sole possible injury to the public, rather than to Wells's business, is confusion regarding the ownership of intellectual property, which has been found insufficient to state a claim under these provisions. See, e.g., Gucci Am., Inc. v. Duty Free Apparel, Ltd., 277 F. Supp. 2d 269, 275 (S.D.N.Y. 2003) ("Claims that arise out of a trademark infringement action . . . constitute situations which courts have found to reflect a public harm that is too insubstantial to satisfy the pleading requirements of § 349."); C=Holdings B.V. v. Asiarim Corp., 992 F. Supp. 2d 223, 247 (S.D.N.Y. 2013).  Wells responds that its allegations "pertain not to source confusion or confusion over the ownership of intellectual property, but rather to

[Unilever's] <u>false advertising</u>, which has materially misled consumers . . . ." Def's Opp'n at 10.  By so misleading consumers, Wells maintains, Unilever's advertising poses a harm to the public that merits redress under Sections 349 and 350.

Wells is correct that its General Business Law claims concern false advertising rather than merely trademark infringement, and thus implicate more than nonactionable "confusion over the ownership of intellectual property."  Nevertheless, the harm arising from Unilever's allegedly false advertising is not sufficiently directed at or borne by consumers to constitute the "gravamen" of Wells's complaint, as required by these provisions.

Namely, courts addressing the question of harm under these provisions have drawn a distinction between false advertising claims that pose a danger to the consumer and those that merely encourage consumers to buy an inferior product or buy a product from one company where they may have preferred to buy it from another.  <u>Compare, e.g.</u>, <u>Weight Watchers Int'l, Inc. v. Stouffer Corp.</u>, 744 F. Supp. 1259, 1285 (S.D.N.Y. 1990) (false advertising involving diet and food would implicate public harm), <u>and</u> <u>Leason Ellis LLP v. Patent & Trademark Agency LLC</u>, 13 Civ. 2880 VB, 2014 WL 3887194, at *1 (S.D.N.Y. July 2, 2014) (claims that defendant "Patent & Trademark Agency LLC" "holds itself out as a government entity" and "seeks to confuse trademark owners into purchasing services under false color of authority" implicate public harm),

with <u>SMJ Grp., Inc. v. 417 Lafayette Rest. LLC</u>, 06 Civ. 1774 (GEL), 2006 WL 2516519, at *1 (S.D.N.Y. Aug. 30, 2006) ("Drawing all inferences in plaintiffs' favor, the most serious harm an individual member of the public could suffer as the result of viewing one of defendants' allegedly misleading leaflets is the possibility that, based on the claims in the leaflet, the individual would pass up a meal at one of plaintiffs' establishments and settle for a less appetizing meal elsewhere. That difference in relative meal satisfaction is a far cry from the type of harm necessary to make out a claim under § 349, such as a concern for public safety . . . or even the economic harm generally associated with consumer frauds."), and <u>LBF Travel, Inc. v. Fareportal, Inc.</u>, 13 Civ. 9143 LAK GWG, 2014 WL 5671853, at *3 (S.D.N.Y. Nov. 5, 2014) (finding plaintiff had "not alleged any facts showing harm to the public" where it alleged that defendant advertised false comparative savings claims, and noting that "even if [plaintiff] had alleged that it or another competitor actually offered better rates, '[t]he limited public harm alleged, that [] consumers paid more for an allegedly inferior product, is incidental in nature and insufficient to support a claim'"). In particular, false advertising claims have been held sufficiently consumer-oriented where they concern "the types of offenses to the public interest that would trigger Federal Trade Commission intervention under 15 U.S.C. § 45, such as potential danger to the

16

public health or safety," Sports Traveler, Inc. v. Advance Magazine Publishers, Inc., 96 Civ. 5150 (JFK), 1997 WL 137443, at *2 (S.D.N.Y. Mar. 24, 1997), and/or where they involve governmental functions or agencies, see, e.g., Securitron, 65 F.3d at (giving false information to regulatory agency and causing it to undertake unnecessary investigations was contrary to public interest); Leason Ellis LLP, 2014 WL 3887194, at *1 (S.D.N.Y. July 2, 2014) (falsely holding one's self out as a government entity is contrary to public interest).

The harm that arguably misled consumers face here--namely, the lessened enjoyment of a confection of sugar, water, and flavoring from a company other than the one intended--is far closer to that faced in SMJ Grp. or LBF Travel than to any "potential danger." Rather, the primary injury sought to be redressed is harm to Wells's business, with consumers allegedly erroneously directed to partake of Unilever's rocket ice pop rather than Wells's own. As such, this case does not present "significant ramifications for the public at large" above and beyond Wells's private injury. Shred-It USA, Inc. v. Mobile Data Shred, Inc., 228 F. Supp. 2d 455, 465 (S.D.N.Y. 2002), aff'd, 92 F. App'x 812 (2d Cir. 2004) (internal quotation marks omitted); see also, e.g., Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC, 08 Civ. 442 TPG FM, 2014 WL 4723299, at *5 (S.D.N.Y. Sept. 23, 2014) ("[False advertising and fraudulent reviews diverting customers

17

from plaintiff's to defendants' business] could arguably affect the public interest in an abstract sense, but the plaintiff provides no facts showing the public health or safety were injured. If plaintiff had alleged that defendants' rival . . . services were unsafe or caused injuries, then the Section 349 claim would be sufficiently stated. However, plaintiff provides no facts showing how defendants' conduct injured the public interest, as opposed to simply injuring its own business reputation."). These claims are therefore dismissed for failure to state a claim.

### D. Federal Trademark Infringement

To demonstrate trademark infringement under 15 U.S.C. § 1114, a plaintiff must show that it owns a protectable mark and that the defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.  See, e.g., Virgin Enterprises Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003).

Here, Wells has asserted a claim for trademark infringement on the ground that it owns registered trademarks for the Bomb Pop and that, if a likelihood of confusion as to the source of the Bomb Pop exists, it does so as a result of Unilever's infringement of Wells's trademarks.  Counter-Complaint ¶¶ 59-60.  Unilever challenges this claim, arguing that Wells has failed to adequately plead a likelihood of confusion because it has asserted only a conditional claim arising "if there is a likelihood of confusion"

and has "deliberately refrained from affirmatively alleging any likelihood of confusion."  Pl's Br. at 11-12.

As Wells notes, Wells is free to assert a counterclaim for infringement that is conditional or contingent upon the outcome of the plaintiff's infringement claim.  See, e.g., Macia v. Microsoft Corp., 335 F. Supp. 2d 507, 522 (D. Vt. 2004), aff'd, 164 F. App'x 17 (2d Cir. 2006) (dismissing as moot counterclaim for infringement that "was pleaded in the alternative and only arises if a likelihood of confusion is found"); Barr v. Dramatists Guild, Inc., 573 F. Supp. 555, 560 (S.D.N.Y. 1983) (finding defendants' "counterclaim is properly framed as a hypothetical pleading").  The claim may proceed without an explicit statement

However, Unilever is correct that, as part of its conditional counterclaim, Wells has not made an affirmative allegation of consumer confusion as required by the statute, requiring dismissal of the counterclaim as pled.  Nevertheless, Wells can allege consumer confusion while retaining the contingent posture of the counterclaim by simply denoting that any allegations of consumer confusion are limited solely to this particular counterclaim.  Because this defect can be cured easily without prejudice to Unilever, this counterclaim is dismissed without prejudice and Wells is granted leave to amend.  See, e.g., Elsevier Inc. v. W.H.P.R., Inc., 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010).

**E. New York Common Law Unfair Competition**

Unilever also challenges Wells's claim for common law unfair competition for failure to affirmatively allege a likelihood of confusion.  Because "[t]he elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims," <u>Erickson Beamon Ltd. v. CMG Worldwide, Inc.</u>, 12 Civ. 5105 (NRB), 2014 WL 3950897, at *9 (S.D.N.Y. Aug. 13, 2014), our analysis of Wells's common law unfair competition claim mirrors our analysis of Wells's Lanham Act claim above.[4]  The claim is therefore dismissed, but Wells is granted leave to re-plead to affirmatively allege consumer confusion for purposes of this counterclaim.

## CONCLUSION

For the aforementioned reasons, Unilever's motion to dismiss is denied with respect to Wells's Lanham Act false advertising claim, granted with respect to Wells's New York General Business Law claims, and granted without prejudice with respect to Wells's

---

[4] Notably, while Wells's counterclaim for "false advertising, unfair competition and unfair business practices under the common law of New York State" recites that "Unilever's . . . using the Original Claim . . . confuses or is likely to confuse the public and consumers," Counter-Complaint ¶¶ 54-55, this allegation refers to confusion about the rocket ice pops' originality rather than their source; as such, it does not fulfill the requirement that a plaintiff claiming unfair competition allege that "the result of the defendant's alleged use [of plaintiff's mark] 'is a likelihood of confusion between the marks of the alleged infringer and the charging party.'" <u>ESPN, Inc. v. Quiksilver, Inc.</u>, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008).

federal trademark infringement and common law unfair competition claims.  This Memorandum and Order resolves docket number 34.


       **SO ORDERED.**

Dated:    New York, New York
           May 13, 2015

                                          NAOMI REICE BUCHWALD
                                          UNITED STATES DISTRICT JUDGE